# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS KNIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF OKLAHOMA ex rel. | ) |
| OKLAHOMA DEPARTMENT OF PUBLIC | ) |
| SAFETY, a Public Agency of the State of | )   Case No. 22-CV-69-TCK-SH |
| Oklahoma, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This case arises from a Black Lives Matter rally in Tulsa, Oklahoma on May 31, 2020 (Rally). One of the rallygoers, Plaintiff Thomas Knight (Plaintiff), sustained injuries when a truck passed through a barricade during the event, causing Plaintiff to fall from a highway overpass and resulting in his paralysis. Plaintiff filed his Amended Complaint (Complaint) on April 28, 2022, asserting five claims for relief against more than 30 defendants. (Doc. 26). Three of the defendants, namely State of Oklahoma, ex rel. Oklahoma Department of Public Safety (DPS); John Scully (Scully), and Brent Sugg (Sugg) (collectively, State Defendants), have moved to dismiss the claims against them, asserting sovereign immunity, qualified immunity, and failure to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6). (Doc. 29). In addition to the State Defendants' motion to dismiss, Defendant Ramona Trailer & Ranch Equipment, LLC (Ramona Trailer) also moved to dismiss Plaintiff's claims against it under Fed. R. Civ. P. 12(b)(6). (Doc. 46). Plaintiff filed a response to State Defendants' motion, (Doc. 33), to which State Defendants replied, (Doc. 51). Plaintiff also filed a response to Ramona Trailer's motion, (Doc. 52), and Ramona Trailer did not file a reply.

## I.  BACKGROUND

According to the Complaint, on May 31, 2020, several thousand people gathered in Tulsa, Oklahoma to protest the death of George Floyd[1] and the relationship between African American citizens and law enforcement writ large (Rally). (Doc. 26 at ¶¶ 1-3, 41). The Complaint suggests that the Rally was initially conceived on May 27, 2020, when a local activist created a Facebook event titled, "BLACK LIVES MATTER RALLY." (*Id.* at ¶ 35). The Rally was scheduled to begin at 5:00 p.m. on May 31 with a number of speeches from community members, followed by a march that would proceed through downtown Tulsa. (*Id.* at ¶¶ 35-36). Over the course of four days between the Rally's conception and commencement, the Complaint alleges that Rally organizers met with the Tulsa Police Department (TPD) to plan the march route and event logistics—though, apparently the march route was not finalized until moments before the Rally was scheduled to begin, and Rally attendees were not provided with information regarding the route in advance of the event. (*Id.* at ¶¶ 37-40, 42).

The Rally commenced as planned on May 31, and after the speeches concluded, rallygoers began to march toward John Hope Franklin Reconciliation Park, which is located in downtown Tulsa and is adjacent to Interstate 244 (I-244). As the rallygoers began to congregate at the park, the size of the crowd outpaced the size of the available space in the park and was pushed closer to I-244. The Complaint states that TPD "funneled . . . people on and near the [I-244] embankment" as they arrived at the park. (*Id.* at ¶¶ 48). The Complaint further alleges that, as the Oklahoma Highway Patrol (OHP) halted westbound I-244 traffic, TPD officers began directing rallygoers to ascend the I-244 access ramp near the park, and soon, hundreds of Rally attendees began pouring

---

[1] As the Complaint notes, George Floyd was an African American male who died on May 25, 2020, after a Minneapolis police officer knelt on his neck. His death precipitated numerous protests throughout the United States. (Doc. 26 at ¶¶ 1-2).

onto I-244. (*Id.* at 48-49, 51). The Complaint asserts that Plaintiff was among those in the crowd directed to ascend the I-244 access ramp. (*Id.* at 50).

Despite having successfully stopped westbound I-244 traffic, the Complaint alleges that OHP troopers nevertheless allowed a truck driven by Defendant Keith Sumner (Sumner) to drive through the barricade. (*Id.* ¶ 54). Witnesses at the scene described Sumner brandishing a firearm and bumping rallygoers with his truck as he made his way through the crowd on the interstate, eventually driving over people in the crowd. (*Id.* at ¶¶ 54-55). There was no egress on the interstate for the crowd to make way for Sumner's truck when he drove past the barricade, causing panicked rallygoers to push back and make way for Sumner's truck. Consequently, Plaintiff—who was standing away from the truck's path on an I-244 overpass at the time—was pushed over the edge of the overpass and onto the ground below. (*Id.* at ¶¶ 57-58). Plaintiff's fall from the overpass resulted in paraplegia, and despite intensive rehabilitation efforts, his condition is likely permanent. (*Id.* at ¶¶ 62-63).

Plaintiff now brings suit against State Defendants, Ramona Trailer, and 35 other defendants for the injuries he suffered as a result of the fall. Of relevance, Plaintiff charges DPS with liability for his injuries under a respondeat superior theory of negligence, imputing the agency with the alleged negligence of multiple OHP Troopers. (*Id.* at ¶¶ 119–29). In addition to the negligence claim against DPS, Plaintiff asserts supervisory liability claims against Scully and Sugg under 42 U.S.C. § 1983 for violations of Plaintiff's Fourteenth Amendment substantive due process rights. (*Id.* at ¶¶ 181-86). Specifically, Plaintiff alleges that, as Commissioner of Oklahoma DPS, Scully is statutorily responsible for supervising and administering OHP, among which includes determining qualifications to be an OHP trooper and ensuring that troopers are properly trained and suitable for the employment demands. (*Id.* at ¶ 16). Further, Plaintiff maintains that Sugg, as

OHP Chief of Patrol, was responsible for promulgating, implementing, and ensuring compliance with policies regarding crowd and traffic control. (*Id.* at ¶ 17). Premised on these facts, Plaintiff asserts that Sugg and Scully, as final policymakers for OHP, failed to establish constitutionally adequate crowd and traffic control policies, the consequences of which was the creation of a dangerous situation to persons such as Plaintiff. (*Id.* at ¶ 182). Accordingly, Plaintiff concludes, Sugg and Scully permitted or acquiesced to a custom of constitutional deprivations with respect to the creation of dangerous situations and were deliberately indifferent to the consequences of such policy failures. (*Id.* at ¶ 183).

With respect to Ramona Trailer, the Complaint alleges is owned and operated by the Sumner family. Further, Plaintiff contends that, at the time Sumner drove through the crowd, he was hauling a horse trailer owned by Ramona Trailer. (*Id.* at 27). To that end, Plaintiff asserts a negligent entrustment claim against Ramona Trailer.

State Defendants filed a motion to dismiss, raising several challenges to the Complaint, namely: 1) sovereign immunity for DPS and for official capacity claims against Sugg and Scully under the Eleventh Amendment of the United States Constitution; 2) qualified immunity for Sugg and Scully with respect to the Fourteenth Amendment supervisory liability claim; 3) failure to state a claim for supervisory liability against Sugg and Scully; and 4) DPS immunity under the Oklahoma Government Tort Claim Act (OGTCA). (Doc. 29). Ramona Trailer premises its motion to dismiss on the fact that it was not organized as an Oklahoma limited liability corporation until nearly four months after May 31, 2020, and thus, Ramona Trailer cannot be held legally liable for negligent entrustment. (Doc. 46). In response to the motions to dismiss, Plaintiff states that the Complaint does not assert § 1983 claims against State of Oklahoma or against Scully and Sugg in their official capacity, and thus, State Defendants' motion to dismiss based on sovereign immunity

is DENIED as MOOT. Plaintiff disputes all other issues raised in the motions to dismiss. The Court now turns to those contested issues.

## II. LEGAL STANDARDS

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (internal citations omitted). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted) (alteration original). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

## III. DISCUSSION

### A. SUGG AND SCULLY QUALIFIED IMMUNITY

As a general rule, when government officials are sued for performing discretionary functions, courts recognize the affirmative defense of qualified immunity, which protects "all but the plainly incompetent or those who knowingly violate the law," shielding them from civil liability. See *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also City of Tahlequah v. Bond*, 142 S. Ct. 9, 10 (2021). Once a defendant raises qualified immunity, "the plaintiff initially bears a heavy two-part burden." See *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 130-31 (10th Cir. 1990)). First, the plaintiff must demonstrate that the defendant's actions violated a constitutional right. Then, the plaintiff must show that the constitutional rights the defendant allegedly violated were clearly established at the time of the conduct at issue. *Id.* If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). However, courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the Court finds that addressing only the second prong of the qualified immunity inquiry is necessary to decide State Defendants' motion to dismiss with respect to Plaintiff's supervisory liability claim. *Est. of Reat v. Rodriguez*, 824 F.3d 960, 9645 (10th Cir. 2016) (courts may exercise their discretion in determining which prong to address first when it "can more readily decide the law was not clearly established before reaching the more difficult question of whether there has been a constitutional violation").

A right is "clearly established" under the second prong of the qualified immunity analysis when the "contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alterations and internal quotations marks omitted). While the inquiry "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 78-79 (2017)). The Supreme Court has further elaborated that the clearly established law must be "particularized" to the facts of the case and not defined at a "high level of generality." *White*, 580 U.S. at 79.

Plaintiff argues that Sugg and Scully are not entitled to qualified immunity because the law regarding both supervisory liability and state-created danger was clearly established before May 2020. (Doc. 33 at 16-18). Of all of the cases cited by Plaintiff, the only one that roughly approximates to the specific facts at hand is *Hernandez v. City of San Jose*, in which the Ninth Circuit held that officers who shepherded rally attendees into a crowd of violent protesters were not entitled to qualified immunity under the state-created danger doctrine. 897 F.3d 1125, 1138-39 (9th Cir. 2018). Notably, the operative claim considered by the *Hernandez* Court was not related to the crowd-control planning; rather, it was related to the officers who "continued to implement [the crowd-control] plan even while witnessing the violence firsthand."[2] *Id.* at 1138. Given that Plaintiff seeks to impose *supervisory liability* for crowd-control planning under the state-created

---

[2] The Court notes that the *Hernandez* plaintiffs' claim related to the crowd-control planning was dismissed by the district court, which found that the officers "were not liable for their planning efforts before the [r]ally began." 897 F.3d at 1131. The dismissal of the crowd-control planning claim was not on appeal and, therefore, was not discussed further in the opinion.

7

danger doctrine, *Hernandez* is inapposite as it relates to Plaintiff's allegations against Sugg and Scully. In short, Plaintiff's "clearly established" analysis merely oscillates between citations to supervisory liability cases and state-created danger cases, and in so doing, Plaintiff fails to present a case that bears any meaningful resemblance to his claims against Sugg and Scully.

Even if the Court were to accept Plaintiff's highly abstracted analysis regarding the law of supervisory liability in the context of crowd-control planning, it must also countenance Plaintiff's self-serving and conclusory—if not outright fanciful—assertion that Sugg and Scully *promulgated* a policy in which OHP troopers were "permitted to allow vehicles to pass through traffic barricades into a crowd of people congregated on a highway." (Doc. 33 at 17). The Court declines to do so here. Accordingly, the Court finds that Sugg and Scully are entitled to qualified immunity with respect to Plaintiff's § 1983 supervisory liability claim.

## B.  STATE DEFENDANTS' IMMUNITY UNDER THE OGTCA

Under the OGTCA, the state waives sovereign immunity from suit, subject to a limited number of "narrowly construed" exceptions. Okla. Stat tit. 51, §§ 152.1, 155; *Reeves v. City of Durant*, 2019 OK CIV APP 12, ¶ 12, 435 P.3d 140, 142. State Defendants challenge Plaintiff's negligence claim based on two such exceptions under § 155(6), namely, injury resulting from civil disobedience and injury resulting from method of law enforcement protection. (Doc. 29 at 13-17). In particular, State Defendants argue that the manner in which Rally attendees walked on the interstate during the rush-hour is unlawful in Oklahoma and, thus, should be construed as civil disobedience within the meaning of the OGTCA statutory exception. (*Id.* at 14-15). Defendants further contend that the OHP troopers were engaged in "protective services"—as opposed to "law enforcement"—at the time of the Rally, which entitles the state to immunity from Plaintiff's negligence claim pursuant to § 155(6). (*Id.* at 15-17).

Ordinarily, this Court defers questions of OGTCA immunity at the motion to dismiss stage of litigation, given the fact-intensive nature of the inquiry. *See Brodrick v. Washington Cnty. Bd. of Cnty. Commissioners*, 2023 WL 113723, at *2 (N.D. Okla. Jan. 5, 2023); *Myers v. Bd. of Cnty. Commissioners of Rogers Cnty.*, 2023 WL 171773, at *3 (N.D. Okla. Jan. 12, 2023). The Court sees no reason to depart from that rule here. The Complaint alleges that rallygoers were shepherded onto the interstate embankment and access ramp, in an effort to accommodate the overwhelming crowd size and limited amount of space at which the Rally took place. The crowd eventually poured over to the westbound lanes of the interstate. (Doc. ¶ 4). Without a complete evidentiary record to evaluate, the Court is not prepared to decide whether that constitutes "civil disobedience" within the narrowly construed meaning of the OGTCA exception. Similarly, without further factual development, the Court is not able to determine whether OHP troopers were engaged in "protective services" or "law enforcement" at the time of the Rally, and thus, the Court cannot decide whether the second prong of State Defendants' OGTCA immunity claim applies. Accordingly, the Court DENIES State Defendants' motion to dismiss on the issue of OGTCA immunity.

**C. RAMONA TRAILER'S EXISTENCE ON MAY 31, 2020**

Ramona Trailer moves to dismiss Plaintiff's negligent entrustment claim against it, contending that it was not in existence at the time of Sumner's allegedly tortious conduct. (Doc. 46). Ramona Trailer urges the Court to take judicial notice of its articles of incorporation filed with the Oklahoma Secretary of State, observing that Ramona Trailer, L.L.C., was not organized as an Oklahoma limited liability corporation until September 2020—several months after the events giving rise to the Complaint. (*Id.* at 4). Because it was not organized when the events giving rise

9

to the Complaint took place, Ramona Trailer argues, it cannot be liable for Plaintiff's injuries that occurred before it existed. (*Id.*)

Even if the Court were to take judicial notice of Ramona Trailer's date of organization, it would hardly put to rest the issue of liability. *See e.g., Indus. Bldg. & Loan Ass'n v. Williams*, 1928 OK 376, 268 P. 228, 231 ("A . . . de facto [corporation] may legally do and perform every act and thing which the same entity could do or perform were it a de jure corporation."); *Jones v. Eppler*, 1953 OK 363, 266 P.2d 451, 458 ("[T]ort liability of an individual, partnership or corporation . . . may be enforced against a [successor] corporation which takes over the business and assets of its predecessor."). Plaintiff's response underscores both de facto and successor corporation theories of liability, offering evidence from Ramona Trailer's website that shows it was established in 2019. (Docs. 52 at 6-10; 52-1). Both the de facto and the successor corporation inquiries are fact specific and not suitable to decide on a motion to dismiss, and this Court does not have sufficient evidence to decide the issue at this time. Accordingly, Ramona Trailer's motion to dismiss (Doc. 46) is DENIED.

### IV. CONCLUSION

State Defendants' motion to dismiss (Doc. 29) is **GRANTED** in part and **DENIED** in part. Specifically, the Court **GRANTS** State Defendants' motion with respect to the § 1983 supervisory liability claim against Defendants Brent Sugg and John Scully, finding that both are entitled to qualified immunity for that claim. The Court **DENIES** the remainder of State Defendants' motion to dismiss. Additionally, Defendant Ramona Trailer's motion to dismiss (Doc. 46) is **DENIED**.

**SO ORDERED** this 1st day of February 2023.

TERENCE C. KERN
United States District Judge